UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR LAMOND JORDAN, SR., Plaintiff, | : : : |
| v. | : No. 3:24-cv-1694 (VAB) : |
| COLLEEN GALLAGHER, *et al*, Defendants. | : : : : |

**INITIAL REVIEW ORDER**

Victor Jordan, Sr. ("Plaintiff"), a sentenced inmate located at Cheshire Correctional Institution ("Cheshire"), has filed a Complaint under 42 U.S.C. § 1983 for violation of his federally protected rights, alleging prison officials denied him needed dental treatment while at Cheshire.

For the following reasons, Mr. Jordan may pursue the following: damages from Colleen Gallagher, Dr. Gloria Perry, Captain Blackstock in their individual capacities on his Eighth Amendment deliberate indifference claim; damages from Dr. Gloria Perry in her individual capacity on his First Amendment retaliation claim; and injunctive relief against Warden Reis in her official capacity on his Eighth Amendment deliberate indifference claim.

All other claims are **DISMISSED**, and all of the other defendants are terminated from this case.

**I. BACKGROUND**[1]

Mr. Jordan alleges having sent a medical request to the prison's dental department on November 9, 2023, asking for a new partial denture because his existing denture was ten years

---

[1] While the Court does not set forth all facts alleged in Mr. Jordan's Complaint, it summarizes his basic factual allegations here to give context to its rulings below.

old and broken. ECF No. 1 at 5. Mr. Jordan allegedly could not eat without his denture slipping. *Id*. This allegedly caused Mr. Jordan to occasionally bite his lips while he was eating, causing him pain and discomfort. *Id.* Mr. Jordan also claims he was to have a tooth extracted two years ago, but that has not happened. *Id.* Mr. Jordan maintains this tooth "is on the verge of becoming infected." *Id*. Mr. Jordan alleges that Dr. Gloria Perry, the head dentist, has erroneously classified Mr. Jordan's tooth as needing "routine" care, which is inconsistent with opinions from Drs. Lichtenstien and Tessler that the tooth requires "immediate treatment." *Id.* at 3, 5. Mr. Jordan maintains that Sharon Strobel, Dr. Perry's dental technician, incorrectly claimed that the tooth had already been extracted. *Id.* at 4, 5.

Mr. Jordan alleges that "Defendants intentionally sabotage[ed]" his "partial impression" because Dr. Perry made comments about Mr. Jordan being "Mister Trouble" due to Mr. Jordan's repeated complaints against medical staff. *Id.* at 6. According to Mr. Jordan, Dr. Perry did not properly fit Mr. Jordan's denture and left it to Mr. Jordan to "figure it out for [him]self." *See id*. This led to Mr. Jordan damaging the wire brace in the denture. *Id.* Mr. Jordan's partial denture broke in one day. *Id.*

Mr. Jordan filed a request with Captain Blackstock, the Americans with Disabilities Act ("ADA") coordinator at Cheshire, for an accommodation under the ADA. *Id.* at 3, 6. Mr. Jordan's request sought dental care outside of the facility. *Id.* Captain Blackstock allegedly denied the request because the dental department indicated that Mr. Jordan did not need a tooth extraction. *Id*. The prison allegedly has not responded to Mr. Jordan's medical grievances pertaining to his broken partial denture. *Id*. Mr. Jordan claims Debra Cruz, an "HSARC," conspired with others to prevent Mr. Jordan from informally resolving his dental issues. *Id.* at 2, 6. Mr. Jordan alleges Colleen Gallagher, the regional administrator of the dental department,

responded to one of Mr. Jordan's medical grievances, indicating that Mr. Jordan's dental issues were "not an ADA matter." *Id.*

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III. DISCUSSION

The Court has thoroughly reviewed all factual allegations in Mr. Jordan's Complaint, and following an initial review of the allegations therein under 28 U.S.C. § 1915A, will address Mr. Jordan's claims under the First, Fourth, Fifth, Sixth, and Eighth Amendment, the ADA, and the Rehabilitation Act ("RA") in turn. *See* ECF No. 1 at 6.

### A. The Eighth Amendment Deliberate Indifference Claim

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prevail on a deliberate indifference claim, Mr. Jordan must present evidence of sufficiently harmful acts or omissions by a prison official. *See Estelle*, 429 U.S. at 104–06. The

prison official must have intended to deny or unreasonably delay access to necessary medical care, or to wantonly inflict unnecessary pain. *See id.* However, "not every lapse in prison medical care will rise to the level of a constitutional violation; rather, the conduct complained of must shock the conscience or constitute a barbarous act." *Daniels v. Murphy*, No. 3:11-cv-286 (SRU), 2014 WL 3547235, at *8 (D. Conn. July 17, 2014) (citation and brackets omitted).

To state a claim for deliberate indifference to a serious medical need, Mr. Jordan must satisfy both objective and subjective components. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154 (1995). To meet the objective component, Mr. Jordan "must show that he actually did not receive adequate care and that the inadequacy in medical care was sufficiently serious." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order). When determining whether a medical need is sufficiently serious, the court considers factors including whether "a reasonable doctor or patient would find [the condition] important and worthy of comment"; whether the condition "significantly affects an individual's daily activities"; and whether the condition causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

If the Court determines that Mr. Jordan was deprived of medical care, it must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citation omitted). If the prisoner was completely deprived of medical care, courts "examine whether [his or her] medical condition is sufficiently serious." *Id*. (citation omitted). Where the prisoner received medical treatment but complains that it was somehow inadequate, "the seriousness inquiry is narrower." *Id*. In such cases, "the seriousness inquiry 'focus[es] on the challenged

delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quotation omitted).

Under the subjective prong of the deliberate indifference test, a prison official must have been actually aware that his or her actions or inactions would cause a substantial risk of harm to the inmate. *See Salahuddin*, 467 F.3d at 279–80 (citation omitted). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id*. at 280. Recklessness requires more than merely negligent conduct. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim," and that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703. Medical malpractice "may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019).

Mr. Jordan asserts two allegations pertaining to inadequate dental care: (1) prison dental staff failed to extract a tooth that "is on the verge of becoming infected," ECF No. 1 at 5, and (2) prison dental staff did not properly fit his partial denture and left Mr. Jordan to "figure it out for [him]self." *Id.* at 6. Because Mr. Jordan allegedly never received the dental treatment he needed, these allegations cannot be considered "delays or interruptions" in treatment. Rather, these allegations are best characterized as complete deprivations of dental treatment. Thus, the Court's inquiry focuses on "whether [his or her] medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280 (citation omitted).

Mr. Jordan's condition is "sufficiently serious" under the criteria set forth in *Chance* because Mr. Jordan's unextracted tooth is at risk of infection and he cannot eat with his partial

denture without pain and discomfort. *See*, *e.g.*, *Giraud v. Cuevas*, No. 3:20-CV-906 (SRU), 2024 WL 1117007, at *3 (D. Conn. Mar. 14, 2024) (collecting cases) (noting that "[a] dental condition can be a sufficiently serious medical condition."); *Chance*, 143 F.3d at 703 (holding plaintiff sufficiently alleged objective component when "as the result of the defendants' actions, he suffered extreme pain, his teeth deteriorated, and he has been unable to eat properly"). Thus, Mr. Jordan has adequately alleged facts satisfying the objective component of the deliberate indifference test.

Mr. Jordan has also adequately alleged facts satisfying the subjective component of the deliberate indifference test. His allegations that dental department staff have either paid insufficient attention to his infected tooth or told him that his tooth had already been extracted sufficiently state subjective recklessness. *See, e.g.*, *id.* at 704 (dentist's "choice of treatment [that] was intentionally wrong and did not derive from sound medical judgment" established subjective component). Mr. Jordan's allegation that Dr. Perry ineffectively fitted Mr. Jordan with a partial denture and left him to figure out the partial denture on his own shows the same. *See*, *e.g.*, *Davis v. Supervisor*, No. 3:21-CV-00648 (SVN), 2022 WL 3681558, at *8 (D. Conn. Aug. 25, 2022) (concluding plaintiff had satisfied subjective component when dental director "knew about Plaintiff's cavity, provided him with other dental care, and denied his grievances requesting additional care for his painful cavity to be filled").

Accordingly, because Mr. Jordan has adequately alleged the objective and subjective components of an Eighth Amendment deliberate indifference to medical needs claim pertaining to his unextracted tooth and his partial denture, this claim will proceed for further development of the record.

### B. The First Amendment Retaliation Claim

To state a cognizable First Amendment retaliation claim, Mr. Jordan must allege: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)). Complaints against medical staff are protected speech. *See Burton v. Salerno*, No. 3:20-cv-1926 (VAB), 2023 WL 184238, at *9 (D. Conn. Jan. 13, 2023) (concluding that an inmate's oral complaints qualified as protected speech because they were "more similar to petitions for redress of grievances than to verbal confrontations with corrections officers, which courts have concluded are not constitutionally protected conduct").

Mr. Jordan' alleges that "Defendants intentionally sabotage[ed]" his partial denture impression after Mr. Jordan had made "repeated complaints against other [m]edical staff." *See* ECF No. 1 at 6. Defendants' alleged "sabotage" of Mr. Jordan's partial denture impression could be considered an "adverse action." *See Otluosin v. Lee*, No. 14-cv-685(NSR), 2016 WL 2899275, at *10 & n.5 (S.D.N.Y. May 16, 2016) (denial of medical care can be considered "adverse action"). While Mr. Jordan's complaints against "other medical staff" may be tenuously connected to "Defendants[']" adverse actions, the Second Circuit has held that a plaintiff may state a First Amendment retaliation claim against prison officials who allegedly took adverse action against him, even though his protected conduct was a lawsuit against officials at a different prison. *See Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003).

Accordingly, this claim will proceed for further development of the record.

### C. The Fourth, Fifth and Sixth Amendment Claims

Although the Court "construe[s] a pro se complaint 'liberally to raise the strongest arguments it suggests[,]'" that "'complaint must state a plausible claim for relief.'" *Darby v.*

8

*Greenman*, 14 F.4th 124, 127–28 (2d Cir. 2021) (quotation omitted). The Fourth Amendment, which pertains to unreasonable searches and seizures, *see* U.S. Const. amend. IV, and the Sixth Amendment, which pertains to "criminal prosecutions," *see* U.S. Const. amend. VI, do not conceivably apply here. The same is true for the Fifth Amendment, with the exception of its Due Process Clause. *See* U.S. Const. amend V.

But the Court cannot discern a procedural due process claim from the Complaint. To the extent that Mr. Jordan alleges a substantive due process claim, the "more specific constitutional protection, rather than the more general notion of substantive due process . . . provides the framework for evaluating Plaintiffs' claims." *20 Dogwood LLC v. Vill. of Roslyn Harbor*, No. 23-930, 2024 WL 1597642, at *1 (2d Cir. Apr. 12, 2024). As a result, Mr. Jordan's claims are better evaluated under the more specific First and Eighth Amendments.

Accordingly, any claims under the Fourth, Fifth, and Sixth Amendment will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b).

### D. The ADA and the RA Claims

To state a claim under the ADA, a plaintiff must allege that he is a qualified individual with a disability and that he was excluded from participation in or denied the benefits of services, programs, or activities because of his disability. *Hargrave v. Vt.*, 342 F.3d 27, 24–25 (2d Cir. 2003). The "mistreatment [must have been] motivated by either discriminatory animus or ill will due to disability." *Garcia v. Univ. of Conn. Health Ctr.*, No. 3:16-cv-852 (JCH), 2016 WL 5844463, at *2 (D. Conn. Sept. 29, 2016).

Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical or mental health treatment but do not allege that the inmate was treated differently because of his disability. *See, e.g., Nails v. Laplante*, 596 F. Supp. 2d 475, 481–82 (D. Conn. 2009) (dismissing

9

inmate's ADA claim based on inadequate medical care because plaintiff did not include any non-conclusory allegations of discrimination based on disability and identified no program he was unable to participate in or service he was denied because of his disability). Even assuming Mr. Jordan is disabled, he has not alleged that Defendants mistreated him because of "either discriminatory animus or ill will *due to disability*." *Garcia*, *supra*, at *2 (emphasis added). Rather, Mr. Jordan alleges that he was mistreated because of his repeated complaints against medical staff. *See* ECF No. 1 at 6.

Accordingly, Mr. Jordan's ADA claim will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b).

The RA provides, in pertinent part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a).

In order to establish a *prima facie* case under the RA, Mr. Jordan must show that (1) he is a qualified individual with a disability; (2) Cheshire is an entity subject to the Act; and (3) he was denied the opportunity to participate in or benefit from Cheshires services, programs, or activities or Cheshire otherwise discriminated against him *by reason of his disability*. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). Again, even assuming that Mr. Jordan is disabled, he has not alleged that denial of dental care stemmed from the fact he was disabled.

Accordingly, Mr. Jordan's claim under the RA will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b).

### E. The Requested relief

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials, as well. *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) ("To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability.").

The Second Circuit has held that "there is no special rule for supervisory liability." *Id.* at 618. Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Id.* at 620. Thus, the plaintiff "must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* at 616 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). A supervisor's mere knowledge of a constitutional violation is insufficient to establish personal involvement. *See id.* 616–17 (noting that "[a] supervisor's 'mere knowledge of his subordinate's discriminatory purpose' is not sufficient because that knowledge does not 'amount [ ] to the supervisor's violating the Constitution'" (quoting *Iqbal*, 556 U.S. at 676)).

Mr. Jordan names eight Defendants. *See* ECF No. 1 at 1. He first names Colleen Gallagher, the administrative remedies, medical, and ADA regional coordinator at Cheshire. *Id*. Mr. Jordan claims that, in this role, she "was at all times apprised of [Mr. Jordan's] medical dilemma." *Id.* at 2. Mr. Jordan alleges that Gallagher responded to his appeal by stating that Mr.

11

Jordan's dental issues were "not an ADA matter." *Id.* at 6. While "courts have held that a supervisory official's act of affirming the denial of a grievance on appeal does not constitute personal involvement," *Young v. Choinski*, 15 F. Supp. 3d 172, 191 (D. Conn. 2014) (citation omitted), if "a supervisory prison official receives a particular grievance, personally reviews it, and responds and/or takes action in response, such conduct may constitute sufficient 'personal involvement' to establish individual liability for the alleged constitutional violation." *Id.* at 191–92 (citing *Bourgoin v. Weir,* Civil No. 3:10cv391 (JBA), 2011 WL 4435695, at *5–6 (D.Conn. Sept. 23, 2011) (noting that a deputy warden "may be liable . . . for failure to remedy a wrong after being informed through a report or appeal, where he or she acts or responds in an inadequate fashion to a prisoner's letter of protest or request")).

Accordingly, because Mr. Jordan alleges Gallagher provided a detailed but inadequate response to Mr. Jordan's appeal concerning his dental issues, *see* ECF No. 1 at 6, this is sufficient, at this early stage, to establish Gallagher's personal involvement in Mr. Jordan's Eighth Amendment claim.

Mr. Jordan next names Debra Cruz, an "HSARC," as a Defendant. *Id.* at 2. Mr. Jordan claims Cruz conspired with other prison staff to prevent informal resolution of Mr. Jordan's dental issues. *Id.* at 6. Mr. Jordan alleges Cruz falsely claimed that she did not receive Mr. Jordan's CN9601 request and did not address his dental issues. *See id.* Even if Cruz received Mr. Jordan's CN9601 request and took no action, this does not establish Cruz's personal involvement in his alleged constitutional violations. *See Young*, 15 F. Supp. 3d at 189 (collecting cases) (noting that "[t]he fact that a prisoner sent a letter or written request to a supervisory official does not establish the requisite personal involvement of the supervisory official").

Accordingly, the claims against Debra Cruz will be dismissed.

Mr. Jordan also names Dr. Gloria Perry as a Defendant. ECF No. 1 at 3. Mr. Jordan alleges that Dr. Perry took the impression of his mouth and teeth for his partial denture, *id.*, which relates to his First Amendment claim. *See supra*. Dr. Perry also allegedly paid insufficient attention to Mr. Jordan's tooth needing extraction. *See* ECF No. 1 at 5.

Accordingly, Dr. Perry was personally involved in allegedly violating Mr. Jordan's First and Eighth Amendment rights.

Mr. Jordan names Captain Blackstock, the ADA coordinator, as a Defendant. *Id.* at 3. According to Mr. Jordan, Blackstock denied his request for reasonable accommodations under the ADA because Mr. Jordan did not need to have his tooth extracted. *Id.* at 6. As with Gallagher, Blackstock justifiably determined that Mr. Jordan's dental needs were not an ADA matter, but his detailed response to Mr. Jordan's grievance establishes personal involvement in Mr. Jordan's Eighth Amendment claim. *See Choinski*, 15 F. Supp. 3d at 191–92 (citations omitted).

Accordingly, Captain Blackstock was personally involved in allegedly violating Mr. Jordan's Eighth Amendment rights.

Mr. Jordan also names Warden Reis as a defendant. ECF No. 1 at 4. Mr. Jordan claims Reis was aware of his dental needs, his difficulties in obtaining dental treatment, and his prior lawsuits. *See id.* "Mere awareness of an issue is no longer sufficient to state a claim for supervisory liability" after *Tangreti*. *Dinh v. Doe*, No. 3:24-CV-1042 (OAW), 2024 WL 3343006, at *2 (D. Conn. July 9, 2024).

Accordingly, because there are sufficient allegations indicating personal involvement in the alleged deprivation of Mr. Jordan's rights, the claims against Warden will be dsimissed.

Mr. Jordan names Sharon Stroebel, Perry's dental assistant, as a Defendant. ECF No. 1 at 4. Mr. Jordan claims Stroebel made "derogatory comments" about him while treating him, including call him a "'trouble maker'" and a "'Queen.'" *Id*. Mr. Jordan also alleges that Stroebel erroneously claimed that his tooth had already been extracted. *Id.* at 5. "[R]udeness and name-calling does not rise to the level of a constitutional violation." *Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2000) (citation omitted). While Stroebel may have been negligent, negligence alone does not establish personal involvement in Mr. Jordan's alleged constitutional violations. *See Anderson v. Williams*, No. 3:15-CV-1364 (VAB), 2016 WL 7217588, at *2 (D. Conn. Dec. 13, 2016) (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (noting that "'negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim.'")).

Accordingly, the claims against Sharon Stroebel will be dismissed.

Mr. Jordan lastly names Nicolle Sullivan and Mike Vitale as Defendants. ECF No. 1 at 1. Unlike the other named Defendants, Mr. Jordan does not describe in his Complaint who these defendants are or how they violated his constitutional rights.

Accordingly, any claims against these two Defendants will be dismissed.

Mr. Jordan may pursue damages from Gallagher, Dr. Perry, and Blackstock for violation of his Eighth Amendment rights. Mr. Jordan may pursue damages from Dr. Perry for violation of his First Amendment rights. Mr. Jordan may not pursue damages from any other Defendant.

Mr. Jordan seeks injunctive relief against the Defendants in their official capacity. *See* ECF No. 1 at 7. He specifically requests dental treatment at Yale University. *See id*. While a "plaintiff's claim for injunctive relief does not require personal involvement, as required for a damages claim," *Branch v. Guadarrama*, No. 3:24-CV-00536 (MPS), 2024 WL 3342991, at *5

14

(D. Conn. July 9, 2024) (citing *See Smith v. Muccino,* 223 F.Supp.2d 396, 403 (D. Conn. 2002) ("[P]ersonal involvement is not a prerequisite to injunctive relief, and such relief may be had against officers in their official capacity.")), "the defendants must be capable of providing the relief sought by the plaintiff." *Gulley v. Ogondo*, No. 3:18-CV-858 (SRU), 2020 WL 1863276, at *2 (D. Conn. Apr. 13, 2020) (citing *Wells v. Jacobs*, 2004 WL 1146028, at *2 (W.D.N.Y. Mar. 22, 2004) (denying motion for temporary restraining order and preliminary injunction because none of the defendants could provide the plaintiff with the requested relief).

The only named defendant who may have authority to arrange for dental care outside of the prison is Warden Reis.

Accordingly, Mr. Jordan may pursue his request for injunctive relief against Reis. *See Vaughan v. Aldi*, No. 3:19-CV-00107 (JAM), 2019 WL 1922295, at *2 (D. Conn. Apr. 29, 2019) (permitting plaintiff to sue Director of Security Risk Group for injunctive relief because it was "plausible to conclude that [Director] . . . may have authority to grant [Plaintiff] injunctive relief from the restrictions to which he is now subject as a result of his apparent SRG designation") (citing *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (*per curiam*) (notwithstanding prison warden's lack of personal involvement in alleged constitutional violation, prison warden remained proper defendant for official-capacity claim seeking injunctive relief that he had authority to carry out)).

## IV. ORDERS

For the foregoing reasons, Mr. Jordan may pursue the following: damages from Colleen Gallagher, Dr. Gloria Perry, Captain Blackstock in their individual capacities on his Eighth Amendment deliberate indifference claim; damages from Dr. Gloria Perry in her individual capacity on his First Amendment retaliation claim; and injunctive relief against Warden Reis in

her official capacity on his Eighth Amendment deliberate indifference claim.

All other claims are **DISMISSED**, and all of the other Defendants are terminated from this case.

The Clerk of Court is respectfully directed to remove from the caption the following individuals: Debra Cruz, Sharon Strobel, Nicolle Sullivan, and Mike Vitale.

The Court enters the following additional orders:

**(1)** The Clerk of Court shall verify the current work address of Colleen Gallagher, Dr. Gloria Perry, Captain Blackstock, and Warden Reis with the Department of Correction Legal Affairs Unit. The Clerk of Court shall mail a copy of the Complaint, this order, and a waiver of service of process request packet to these defendants at their confirmed address by **May 2, 2025**. By **May 16, 2025,** the Clerk of Court shall report to the Court on the status of the requests. If a Defendant fails to return the waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals Service and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(2)** Defendants shall file their response to the Complaint, either an Answer or motion to dismiss, by **June 27, 2025**. If Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

**(3)** Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **October 31, 2025**. Discovery requests need not be filed with the Court.

**(4)** All motions for summary judgment shall be filed by **December 5, 2025**.

**(5)** If Mr. Jordan changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the

dismissal of the case. Mr. Jordan should write PLEASE NOTE MY NEW ADDRESS on the notice. Putting a new address on a letter without indicating that it is a new address is insufficient. If Mr. Jordan has more than one pending case, he should indicate all case numbers in the notification of change of address. Mr. Jordan should also notify the attorney for Defendants of his new address.

**(6)** Mr. Jordan shall utilize the Prisoner E-filing Program when filing documents with the Court. Mr. Jordan is advised that the Program may be used only to file documents with the Court. Local Court Rule 5(f) provides that discovery requests are not to be filed with the Court. Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**(7)** The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

**(8)** The Clerk of Court shall send a courtesy copy of the complaint, and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

SO ORDERED.

Dated this 28th day of March, 2025 at New Haven, Connecticut.

/s/ Victor A. Bolden

Victor A. Bolden
United States District Judge